**In re HALLIBURTON COMPANY and Brown & Root Energy Services, Relators.**

No. 00–1206.

Supreme Court of Texas.

Argued Nov. 7, 2001.

Decided May 30, 2002.

Rehearing Denied Aug. 22, 2002.

---

8. 77 S.W.3d 253 (Tex.2002).

9. 876 S.W.2d 842 (Tex.1994).

10. *Smith v. Allwright,* 321 U.S. 649, 669, 64 S.Ct. 757, 88 L.Ed. 987 (1944) (Roberts, J., dissenting).

Russell J. Weintraub, Austin, W. Carl Jordan, Vanessa M. Clem, Vinson & Elkins, Houston, for Relators.

Barbara J. Gardner, Barbara Gardner & Associates, David W. Holman, Holman & Keeling, PC, Houston, for Respondent.

Chief Justice PHILLIPS delivered the opinion of the Court in which Justice HECHT, Justice ENOCH, Justice OWEN, Justice HANKINSON, Justice O'NEILL, Justice JEFFERSON, and Justice RODRIGUEZ joined.

We are once again asked to decide whether mandamus should issue to enforce an arbitration provision, in this instance between an employer and an at-will employee. The employer sent notice of a new dispute resolution program (the Program) to the employee informing him that continuing employment would constitute acceptance of the new plan. When the employee was later demoted, he filed suit rather than following the Program. The district court denied the employer's motion to compel arbitration under the Federal Arbitration Act and stay or dismiss the trial court proceedings. The court of appeals also denied relief. —— S.W.3d ——. We conclude that the Program meets the requirements for altering an at-will employment contract, is not unconscionable, and is otherwise enforceable under general contract principles. Because the employer has no adequate remedy on appeal, we conditionally grant the writ.

## I

James D. Myers has been an at-will employee of Brown & Root Energy Services, now a subsidiary of Halliburton Company, for approximately thirty years. In November 1997, Halliburton sent notice to all employees of Halliburton companies that it was adopting a Dispute Resolution Program.[1] As part of that program, binding arbitration was designated as the exclusive method for resolving all disputes between the company and its employees. The notice informed employees that by continuing to work after January 1, 1998, they would be accepting the new program.[2]

Myers does not dispute that he received this notice, but he claims that he did not fully understand it. Nevertheless, he continued working for Halliburton after January 1, 1998. Sometime in 1998, Halliburton demoted him from his position as a General Welding Foreman. Although he was told this demotion was due to "a lack of interpersonal skills," Myers alleges that the real reason was discrimination based on his race and age. In October 1999, Myers brought this suit in district court alleging wrongful demotion in violation of the Texas Commission on Human Rights Act, Tex. Lab.Code § 21.001. Halliburton asked the trial court to compel arbitration under the Program and to either stay or dismiss the lawsuit. The trial court denied the motion, and the court of appeals denied Halliburton's petition for writ of mandamus.

## II

Under the Federal Arbitration Act (FAA), an agreement to arbitrate that is valid under general principles of state contract law and involves interstate commerce is "valid, irrevocable, and enforceable." 9 U.S.C. § 2. The parties here do not dispute that the contract involves interstate commerce. We must determine whether, under state law, the Program's arbitration clause is valid. 9 U.S.C. § 2.

In *Hathaway v. General Mills, Inc.*, 711 S.W.2d 227 (Tex.1986), we outlined the manner in which an employer may change the terms of an at-will employment contract. We held that the party-asserting a change to an at-will employment contract must prove two things: (1) notice of the change, and (2) acceptance of the change. *Id.* at 229. We stated that "to prove notice, an employer asserting a modification must prove that he unequivocally notified the employee of definite changes in employment terms." *Id.* Yet we made clear that when an employer notifies an employee of changes to the at-will employment contract and the employee "continues working with knowledge of the changes, he has accepted the changes as a matter of law." *Id.* (citation omitted).

Here, it is undisputed that Halliburton notified Myers of the proposed changes. The notice explained the Program, stated its effective date, and explained that by working after that date an employee would indicate that he or she accepted the provision. Myers argues that he only briefly

---

1. Brown & Root apparently adopted the same program in 1993. The parties provided this Court with a cover letter for materials sent to Brown & Root employees in 1993. However, the materials were not provided to us. Even if Myers' at-will employment contract was modified when Brown & Root adopted the program in 1993, it was further modified in 1998 when Halliburton adopted the program for all of its employees.

2. In its motion to compel arbitration, Halliburton also argued that Myers had agreed to arbitration by signing a document entitled "Assignment Authority Supplement," which contained a statement acknowledging the new Dispute Resolution Program and agreeing to submit to binding arbitration. When Myers asserted that the signature on the document was not his, Halliburton abandoned this argument.

looked at the documents and that he did not understand them. The materials, however, unequivocally notified him that his employment terms would be changing. A one-page summary included in the materials stated:

> While both you and Halliburton retain all substantive legal rights and remedies under this Program, you and Halliburton are both waiving all rights which either may have with regard to trial by jury for employment related matters in state or federal court.

The accompanying materials set forth that adopting the new Program meant that

> if you accept or continue your employment after January 1, 1998, you will agree to resolve all legal claims against Halliburton through this process instead of through the court system.

After receiving this notice, Myers continued to work for Halliburton after January 1, 1998, thus accepting the changes as a matter of law.

This is not a case in which the written notice was contradicted by other written or oral communications between the employer and the employee. *See Hathaway*, 711 S.W.2d at 229. On this record we conclude that Halliburton's offer was unequivocal and that Myers' conduct was an acceptance of that offer.

The court of appeals held that Halliburton's promises were illusory, and therefore could not constitute consideration for Myers' promise to arbitrate. —— S.W.3d ——. The court relied on *Light v. Centel Cellular Co.*, 883 S.W.2d 642 (Tex.1994), for the proposition that

> because an at-will employer and employee may not contract to limit the ability of either to terminate the employment at-will, a promise by either which is dependent on a period of continued employment is illusory and thus insufficient to support a bilateral contract because it

would fail to bind the promisor who always retains the option of discontinuing employment in lieu of performance.

*Id.* at 645.

This is a correct statement of the law, but it does not apply to the situation here. In *Light*, we considered the validity of a covenant not to compete between an at-will employee and her employer. *Light*, 883 S.W.2d at 643. We held that certain promises made by the employer in the covenant were illusory because they were dependent on the at-will employee's continued employment. *Id.* at 645–46. The employer could avoid performance simply by terminating the employment relationship, while the employee was bound whether she stayed or left. *Id.* at 645.

By contrast, the Program is not *dependent* on continuing employment. Instead, it was *accepted* by the employee's continuing employment. When Myers reported for work after January 1, 1998, he accepted Halliburton's offer; both Myers and Halliburton became bound to arbitrate any disputes between them. Even if Myers' employment had ended shortly thereafter, the promise to arbitrate would have been binding and enforceable on both parties. In *Light*, the employer was bound only while the employee continued to work. Thus, following Myers' acceptance, the Program was not dependent on continuing employment and was not illusory. *See also In re Jebbia*, 26 S.W.3d 753, 758 (Tex.App.-Houston [14th Dist.] 2000, orig. proceeding) (rejecting the argument that an arbitration provision lacked consideration because the employment relationship was at-will).

Myers also asserts that Halliburton's promises were illusory because the company retained the right to modify or discontinue the Program. But the Program also provided that "no amendment shall apply

to a Dispute of which the Sponsor [Halliburton] had actual notice on the date of amendment." As to termination, the plan stated that "termination shall not be effective until 10 days after reasonable notice of termination is given to Employees or as to Disputes which arose prior to the date of termination." Therefore, Halliburton cannot avoid its promise to arbitrate by amending the provision or terminating it altogether. Accordingly, the provision is not illusory.

Myers further asserts that because his statutory rights under the Texas Commission on Human Rights Act are implicated, a higher standard applies in determining if he agreed to binding arbitration. For this proposition, he cites *Prudential Insurance Co. v. Lai*, 42 F.3d 1299 (9th Cir.1994). *Lai* held that the employer must establish at least a "knowing agreement to arbitrate employment disputes" before an employee may be deemed to have waived a judicial determination of his or her rights under Title VII and related state statutes. *Lai*, 42 F.3d at 1304. The court held that because the arbitration agreement did not specifically mention the type of claim the plaintiffs alleged, the plaintiffs could not have "knowingly" agreed to arbitrate those claims. *Id.* at 1305. However, nearly every subsequent decision has rejected *Lai's* "knowing waiver" standard. *See, e.g., Penn v. Ryan's Family Steak Houses, Inc.*, 269 F.3d 753, 761 (7th Cir.2001); *Haskins v. Prudential Ins. Co. of Am.*, 230 F.3d 231, 239–40 (6th Cir.2000); *Seus v. John Nuveen & Co.*, 146 F.3d 175, 183 n. 2 (3rd Cir.1998); *Battle v. Prudential Ins. Co. of Am.*, 973 F.Supp. 861, 866 (D.Minn. 1997); *Cremin v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 957 F.Supp. 1460, 1474–75 (N.D.Ill.1997); *Maye v. Smith Barney, Inc.*, 897 F.Supp. 100, 107 (S.D.N.Y.1995); *Bryant v. American Exp. Fin. Advisors, Inc.*, 595 N.W.2d 482, 486 (Iowa 1999); *DeCaminada v. Coopers & Lybrand, L.L.P.*, 232 Mich.App. 492, 591 N.W.2d 364, 368 (App.1998); *but see Hooters of Am., Inc. v. Phillips*, 39 F.Supp.2d 582, 612 (D.S.C.1998); *Hoffman v. Aaron Kamhi, Inc.*, 927 F.Supp. 640, 645 (S.D.N.Y.1996). Moreover, *Lai's* "knowing waiver" standard is inconsistent with the United States Supreme Court's decisions in *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991), and *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 121 S.Ct. 1302, 149 L.Ed.2d 234(2001). In *Gilmer*, a suit under the Age Discrimination in Employment Act, the Court noted that under the FAA, arbitration agreements are "valid, irrevocable, and enforceable save upon such grounds as exist at law or in equity for the revocation of any contract." *Gilmer*, 500 U.S. at 24–25, 111 S.Ct. 1647. The Court concluded that such statutory causes of action may be the subject of an arbitration agreement. *Id.* at 26, 111 S.Ct. 1647. In *Circuit City*, an employer brought an action in federal court under the FAA seeking to enjoin a suit in state court under a California employment discrimination statute, because the employee had agreed to arbitration. *Circuit City*, 532 U.S. at 110, 121 S.Ct. 1302. The employee argued that the FAA does not apply to contracts of employment. *Id.* at 113, 121 S.Ct. 1302. The Court stated that it "had been clear in rejecting the supposition that the advantages of the arbitration process somehow disappear when transferred to the employment context," and held for the employer. *Id.* at 123, 121 S.Ct. 1302. Requiring *Lai's* heightened standard would undermine these principles by allowing an arbitration agreement covering statutory claims to be declared unenforceable on some basis other than one required at law or in equity for contract revocation.

Myers also urges this Court to require a heightened standard because a Federal Equal Employment Opportunity Commission policy disfavors compulsory arbitration of discrimination claims. Policy Statement on Mandatory Binding Arbitration of Employment Discrimination Disputes, EEOC Notice No. 915.00 (July 10, 1997). While we may give some deference to the statutory interpretation of the government agency charged with implementing that statute, that cannot trump our deference to a United States Supreme Court decision. *See In re American Homestar of Lancaster, Inc.,* 50 S.W.3d 480, 490–91 (Tex.2001).

Finally, Myers argues that this provision should not be enforced because it is unconscionable. Unconscionability includes two aspects: (1) procedural unconscionability, which refers to the circumstances surrounding the adoption of the arbitration provision, and (2) substantive unconscionability, which refers to the fairness of the arbitration provision itself. *See Southwestern Bell Tel. Co. v. DeLanney,* 809 S.W.2d 493, 498–99 (Tex.1991) (Gonzalez, J., concurring). In *In re Oakwood Mobile Homes, Inc.,* 987 S.W.2d 571, 573 n. 3 (Tex.1999), we observed in dicta that substantive unconscionability of an arbitration clause cannot be asserted to the court as a reason not to compel arbitration, and that such a claim must instead be "submitted to the designated arbitrator." [3]

This proposition first appeared in Texas jurisprudence in *In re Foster Mold, Inc.,* 979 S.W.2d 665, 667 (Tex.App.-El Paso 1998) (orig. proceeding). That case relied on the United States Supreme Court's decision in *Prima Paint Corp. v. Flood &*

*Conklin Manufacturing Co.,* 388 U.S. 395, 403–04, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967), and on two cases from the Fifth Circuit Court of Appeals: *Miller v. Public Storage Management, Inc.,* 121 F.3d 215 (5th Cir.1997), and *R.M. Perez & Associates, Inc. v. Welch,* 960 F.2d 534 (5th Cir. 1992).

In *Prima Paint Corp.,* the Supreme Court held that under section 4 of the FAA, "if the claim is fraud in the inducement of the arbitration clause itself ... the federal court may proceed to adjudicate it," but "the statutory language does not permit the federal court to consider claims of fraud in the inducement of the contract generally." *Prima Paint Corp.,* 388 U.S. at 403–04, 87 S.Ct. 1801. The Fifth Circuit cases have similar language. *See Miller,* 121 F.3d at 218–19; *R.M. Perez,* 960 F.2d at 538–39. Neither *Miller* nor *R.M. Perez* addressed the distinction between procedural and substantive unconscionability of an arbitration clause. They each noted that courts may consider claims relating to the arbitration clause itself but not regarding the contract as a whole. These cases simply do not support *Foster Mold's* conclusion that a court may not address claims that the arbitration clause is substantively unconscionable.

■ Several federal courts have examined substantive unconscionability of an arbitration clause when ruling on a motion to compel. *See, e.g., Dobbins v. Hawk's Enters.,* 198 F.3d 715, 717 (8th Cir.1999); *Harris v. Green Tree Fin. Corp.,* 183 F.3d 173, 181–84 (3rd.Cir.1999); *We Care Hair Dev., Inc. v. Engen,* 180 F.3d 838, 843 (7th Cir.1999); *Doctor's Assocs., Inc. v. Hamilton,* 150 F.3d 157, 163 (2nd Cir.1998); *Ste-*

---

3. Several courts of appeals have relied on this language in examining arbitration provisions. *See In re Rangel,* 45 S.W.3d 783, 786 (Tex. App.-Waco 2001, orig. proceeding); *Smith v. H.E. Butt Grocery Co.,* 18 S.W.3d 910, 912 (Tex.App.-Beaumont 2000, pet. denied); *In re H.E. Butt Grocery Co.,* 17 S.W.3d 360, 367 (Tex.App.-Houston [14th Dist.] 2000, orig. proceeding).

*dor Enters., Ltd. v. Armtex, Inc.,* 947 F.2d 727, 733 (4th Cir.1991). These cases seem to us clearly correct. *See also In re Conseco Fin. Servicing Corp.,* 19 S.W.3d 562, 568 n. 3 (Tex.App.-Waco 2000, orig. proceeding) (questioning the validity of the dicta in *Oakwood Homes*). We therefore clarify that courts may consider both procedural and substantive unconscionability of an arbitration clause in evaluating the validity of an arbitration provision.

■■■ Myers first asserts that the provision is procedurally unconscionable as there was gross disparity in bargaining power between the parties because Myers had no opportunity to negotiate; Halliburton told him to accept the Program or leave. But in *Hathaway,* we recognized that an employer may make precisely such a "take it or leave it" offer to its at-will employees. *Hathaway,* 711 S.W.2d at 228–29. Because an employer has a general right under Texas law to discharge an at-will employee, it cannot be unconscionable, without more, merely to premise continued employment on acceptance of new or additional employment terms. *See also Smith v. H.E. Butt Grocery Co.,* 18 S.W.3d 910, 912 (Tex.App.-Beaumont 2000, pet. denied) (rejecting the argument that an arbitration provision is unconscionable merely because the parties did not negotiate its terms).

■■ Myers also argues that the arbitration plan is so unfair to employees that the Program is substantively unconscionable. But Myers has failed to make such a showing here. The Program has several terms that provide protection to the employee in the process. For example, the company agreed to pay all the expenses of an arbitration except a $50 filing fee. Both parties are to participate in the selection of the neutral arbitrator. The Program provides up to $2,500 for an employee to consult with an attorney. The rules provide for pre-arbitration discovery under the Federal Rules of Civil Procedure. All remedies the employee could have pursued in the court system are available in the arbitration. And the arbitrator may award reasonable attorney's fees to an employee who receives a favorable award regardless of whether such an award would be available in court. On this record, we conclude that Myers has failed to carry his burden to show that the Program is unconscionable.

Several courts have found arbitration provisions with similar terms to be enforceable. *See Cole v. Burns Int'l Sec. Servs.,* 105 F.3d 1465, 1482 (D.C.Cir.1997) (arbitration agreement valid which (1) required a neutral arbitrator, (2) allowed more than minimal discovery, (3) resulted in a written award, (4) allowed all remedies that would be available in court, and (5) did not require the employee to pay either unreasonable costs or any arbitrator's fees or expenses); *Beauchamp v. Great West Life Assurance Co.,* 918 F.Supp. 1091, 1098 (E.D.Mich.1996) (an agreement to arbitrate is not substantively unconscionable because the employee did not waive any substantive rights, the employee simply agreed to have those rights determined in a different forum); *Rembert v. Ryan's Family Steak Houses, Inc.,* 235 Mich.App. 118, 596 N.W.2d 208, 226 (App.1999) (an arbitration agreement covering statutory claims is valid so long as "the arbitration agreement does not waive the substantive rights and remedies of the statute and the arbitration procedures are fair so that the employee may effectively vindicate his statutory rights").

## III

■ We conclude that Myers clearly had notice of the proposed changes to his at-will employment contract and accepted them by continuing to work after January

1, 1998. We also conclude that Myers has failed to show that the arbitration provision is unconscionable. Because the arbitration provision is otherwise enforceable under general contract principles, a valid arbitration provision exists between Myers and Halliburton, and the trial court should have granted Halliburton's motion to compel arbitration. Mandamus relief is appropriate because Halliburton has no adequate remedy by appeal. *See Jack B. Anglin Co. v. Tipps,* 842 S.W.2d 266, 271 (Tex.1992). Accordingly, we conditionally grant the petition for writ of mandamus. The writ will issue only if the trial court fails to act promptly.

Justice BAKER concurred in the Court's judgment only.